FIDELITY UNION TRUST COMPANY, RESPONDENT, v. DECKER BUILDING MATERIAL COMPANY, INCORPORATED, AND WILLIAM D. DECKER, APPELLANTS.

Argued May 23, 1929—Decided February 3, 1930.

For the appellants, *Kanter & Kanter*.

For the respondent, *Wolber & Gilhooly (John H. Yauch, Jr.,* of counsel).

The opinion of the court was delivered by

KALISCH, J. This is an appeal from a judgment entered in the Essex County Circuit Court in favor of the plaintiff below against the defendants below. The plaintiff brought its action against the defendants to recover the amount due on a promissory note, payable to the order of one Meyer Gendel. Before the maturity of the note, it was endorsed by William D. Decker and Meyer Gendel, and by the latter was discounted in the plaintiff bank. The note was signed by the Decker Building Material Company, by William D. Decker, president. Upon the failure of the defendants, or either of them, to pay the note on the due date, the note was duly protested and notice of the dishonor of said note sent by the notary to the endorsers.

To the plaintiff's complaint the defendant Decker Building Material Company filed an answer in which it admits that it is the maker of the note but says that said note was executed and delivered contemporaneously with a certain contract made between it and one Meyer Gendel, whereby the latter agreed to complete all the work which he had undertaken to perform, in which the Decker company was interested, before September 1st, 1928, and in case of default, on Gendel's part, the latter agreed to return the note, if in his hands, and if in other hands, to pay it and release the defendant company from any liability on the note.

It is convenient to point out here that in the answer of the Decker company, to the plaintiff's complaint, it admits that it was contemplated by it, that Gendel might in the course of business dispose of the note to a *bona fide* purchaser for value, and thus its liability on the note would be fixed. The appellant company further admits in its answer that before the note became due it was endorsed by William D. Decker, president of the company, in his individual capacity. The appellant company in its answer denies the note was duly protested, or that it had due notice of any protest. Of course, as maker, it was not entitled to any notice of protest.

We find nothing more in the separate defenses set up by

the appellant company in its answer than a general denial of its liability on the note.

William D. Decker, president of the appellant company, filed an answer in his individual capacity. He lent his personal obligation to pay the note, by endorsing it in his individual capacity, in the event that the corporation of which he was the head failed to do so. He admits that before the note became due he endorsed the same to Gendel. He also sets up the same defense as set up by the appellant company, that there was a contract between the company and Gendel at the time the note was given, by which under certain conditions Gendel was to return the note, if in his hands, and if in other hands, to pay it, and release him, Decker, from any and all liability on said note.

This being the same kind of plea set up by the company, the comment made upon the transaction, as to the appellant company, is applicable here.

The appellant Decker further sets up in his answer as one of his defenses that due notice of dishonor of the note was not mailed to him. The other defenses set up by him are in the nature of a general denial of liability on his part.

This was the posture of the case at the time when notice was given by counsel of plaintiff-respondent to counsel of defendants-appellants, of a motion to be made before the Essex County Circuit Court, to strike out the answers and defenses upon the general grounds that they were sham and frivolous and were interposed merely for the purpose of delay. The notice to strike out was accompanied by affidavits, according to the rule of the court, and there were counter-affidavits offered in behalf of appellants, and the matter coming on to be heard before the Circuit Court judge, he struck out the answers as being sham, and ordered judgment in favor of the plaintiff for the amount of the note, interest and costs.

The first point urged on behalf of the appellants for a reversal is, that the affidavits in support of the motion to strike out the answers and defenses were not as a matter of law sufficient to justify their being stricken out, and the entry of a final judgment.

Criticism is first made upon the finding of the judge that the answers were sham, and that such finding indicates that the facts set forth in the appellants' affidavits were untrue, whereas, if that were so, because of their contradiction of the respondent's affidavits, it was not within the province of the judge to so decide, since a factual issue was raised for the determination of a jury.

But this criticism seems to us to be without any legal force, for if it appeared that the answers are frivolous and intended for the purpose of delay, the mere fact they were stricken out by the judge, upon the ground of their being sham, would not impair the efficacy of the judgment, because of a wrong reason given by him for his judicial act, so long as it appeared that the answers were and are frivolous.

Next, it is argued on behalf of appellants that the affidavits presented by the plaintiff in the court below, and upon which the latter based a right for the entry of a summary judgment, were defective, in that none of the affidavits contains the required statutory averments, namely, "that there is no defense to the action."

While it is true that the statutory language was not used, a perusal of the affidavits discloses that the affiants made use of language which is equivalent in sense and meaning to the words employed by the statute. As a matter of good practice the words of the statute should be used, but the failure to do so in the instant case, for the reason stated, was not fatal to the legal efficacy of the affidavits.

On behalf of the appellants, it is further urged that the averments made in their answers disclose controverted questions of fact, and therefore, the appellants were entitled to have those questions of fact determined by a jury.

Giving to the matters set up by the appellants, in their answering affidavits, the widest scope and most liberal interpretation, they fail to disclose a legal defense to the plaintiff-respondent's right to a recovery.

The burden was upon the appellants to establish, in order to escape liability, that the plaintiff-respondent had knowledge of the infirmity in the note in question at the time

it was discounted, and further, that the proceeds of the said note had not been checked out by the bank. As to the first assertion, there is no fact set out in the appellants' answering affidavits that tends to establish that the plaintiff-respondent had any knowledge of any infirmity in the note at the time it was discounted, and as to the second contention, that the proceeds derived from said note had only been credited to Gendel's account, and not checked out by him. There is nothing in the answering affidavits of the appellants which tends to establish the claim made to be a fact; and as the legal presumption is, that the holder of a negotiable instrument, transferred to him, before maturity, is a *bona fide* holder for value, the burden rests upon the defendant to establish otherwise.

What was said by this court in *Maurer* v. *Hahn et al.,* 104 *N. J. L.* 494, is applicable to one phase of the situation here. The court said: "The language of section 30 of the Negotiable Instruments act (3 *Comp. Stat.* 1910, *p.* 3738) leaves no room for doubt as to what is meant by an instrument negotiated. It declares: 'An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the endorsement of the holder completed by delivery.' "

"The word 'negotiated' in the statute is used in the sense of the word 'transferred.' Furthermore, section 52 of the Negotiable Instruments act (3 *Comp. Stat.* 1910, *p.* 3741), in defining a holder in due course, declares: 'A holder in due course is a holder who has taken the instrument under the following conditions: I. That it is complete and regular upon its face; II. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; III. That he took it in good faith and for value; IV. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.' "

It is further contended on part of the appellants that due notice of the protest of the note was not given to William D. Decker, and therefore, there should not have been a judgment enterd against him, individually.

There is no merit in this contention. The affidavits of the plaintiff-respondent, on its application for a summary judgment, disclose that a notice of protest of the note, after due inquiry made by the notary, who protested the same, as to the address of William D. Decker, was duly mailed by the notary to the latter's place of business, as ascertained upon such inquiry, and said notice was never returned by the postal authorities.

The judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.